**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FERNANDO BELMONTES, JR.,
             *Petitioner-Appellant,*

v.

JOHN STOKES, Warden, for the
California State Prison at San
Quentin,*

             *Respondent-Appellee.*

No. 01-99018

D.C. No.
CV-89-00736-DFL
Eastern District of
California,
Sacramento

ORDER

Filed October 24, 2005

Before: Stephen Reinhardt, Diarmuid F. O'Scannlain, and
Richard A. Paez, Circuit Judges.

Order;
Dissent by Judge Callahan

---

## ORDER

A judge requested a vote on whether to rehear this case en
banc. The case failed to receive a majority of the votes of the
nonrecused active judges in favor of en banc consideration.
Fed. R. App. P. 35. The request for rehearing en banc is
denied.

---

*John Stokes is substituted for his predecessor, Jill L. Brown, as War-
den of California State Prison at San Quentin. *See* Fed. R. App. P.
43(c)(2).

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN, KLEINFELD, GOULD, TALLMAN, BYBEE and BEA, Circuit Judges, join, dissenting from denial of rehearing en banc:

I respectfully again dissent from a denial of rehearing en banc in Mr. Belmontes' case. My dissent is not based on my adherence to the reasons set forth in my dissent from our decision last year not to take this case en banc, *Belmontes v. Woodford*, 359 F.3d 1079 (9th Cir. 2004), but on our failure to follow the Supreme Court's directions.

Following our prior opinion in this case, the Supreme Court summarily granted the State of California's petition for a writ of certiorari, vacated our judgment, and remanded the case for further consideration in light of *Brown v. Payton*, 125 S. Ct. 1432 (2005). *Brown v. Belmontes*, 125 S. Ct. 1697 (2005). On remand, the panel properly rejected most of the issues raised by Belmontes. However, on one critical issue - the constitutional adequacy of the jury instructions in the penalty phase of the trial - the panel majority improperly adhered to its own perspective rather than listen to the Supreme Court. The majority holds that *Payton* "does not affect" its holding because *Payton* is a post-AEDPA[1] case, decided under the highly deferential AEDPA standard, while this case is a pre-AEDPA case and "is determined by the application of the ordinary rules of constitutional interpretation." *Belmontes v. Brown*, 414 F.3d 1094, 1101 (9th Cir. 2005). A review of this case and *Payton*, however, reveals that this distinction between the cases does not entitle the panel majority to ignore the Supreme Court's guidance on interpreting the jury instructions.

---

[1]The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 124.

# I

The perceived chink in Belmontes' trial, which the panel majority attempts to broaden into a constitutional violation, is the language in jury instruction factor (k).[2] The majority reluctantly concedes that the Supreme Court in *Boyde v. California*, 494 U.S. 370, 383 (1990), held that factor (k), "at least when accompanied by an appropriate clarifying instruction, was constitutional as applied to mitigating evidence relating to the defendant's psychological make-up and history, which practically, if not legally, bore upon his commission of the crime and was offered for the purpose of reducing his culpability for the offense." *Belmontes*, 414 F.3d at 1132. The majority, nonetheless, attempts to create a distinction between (a) mitigating evidence that addresses a defendant's culpability and (b) past conduct that is allegedly indicative of a defendant's probable future behavior. *Id*. It concludes that *Boyde* "did not address whether a reasonable jury would have interpreted the unadorned factor (k) instruction to include the use of this same type of evidence for a forward-looking purpose which serves to mitigate without ameliorating the crime." *Id*. at 1133. This inordinate parsing of the Supreme Court's opinion permits the panel majority to then argue that the language of factor (k) "allows the jury to consider evidence that bears upon the commission of the crime by the defendant and excuses or mitigates his culpability for the offense," but "does

---

[2]The jury was instructed:

> In determining which penalty to be imposed on the defendant you shall consider all of the evidence which has been received during any part of the trial of this case, except as you may be hereafter instructed. You shall take into account, and be guided by the following factors, if applicable:
>
> . . .
>
> Any other circumstances which extenuates the gravity of the crime even though it is not a legal excuse for the crime.

As noted by the panel, *Belmontes*, 414 F.3d at 1130 n.14, to remain consistent with the text of the statute and the Supreme Court's terminology in *Boyde*, this instruction is referred to as "factor (k)."

not encompass events or considerations that are unrelated to the defendant's culpability." *Id.* at 1134.

The panel majority's construction fails to recognize that the Supreme Court has held that the language of factor (k) is not an unconstitutional chink, but a sound jury instruction. Indeed, the majority's interpretation of *Boyde* is contrary to the Supreme Court's reading of *Boyde* in *Payton*. In *Payton,* the Court wrote:

> The California Supreme Court was correct to iden-tify *Boyde* as the starting point for its analysis. *Boyde* involved a challenge to the same instruction at issue here, factor (k). As to the text of factor (k), *Boyde* established that it does not limit the jury's consider-ation of extenuating circumstances solely to circum-stances of the crime. *See* 494 U.S. at 382, 110 S. Ct. 1190. In so holding, we expressly rejected the sug-gestion that factor (k) precluded the jury from con-sidering evidence pertaining to a defendant's background and character because those circum-stances did not concern the crime itself. *Boyde* instead found that factor (k), by its terms, directed the jury to consider any other circumstance that might excuse the crime, including factors related to a defendant's background and character.

125 S. Ct. 1439 (emphasis added). It should be noted that this is an affirmance of, not a deferral to, the California Supreme Court's interpretation of the scope of factor (k). Thus, the majority's attempt to distinguish between mitigating evidence that addresses culpability and mitigating evidence that alleg-edly goes to a defendant's probable future behavior is con-trary to the Supreme Court's approach to factor (k).

## II

Any remaining question as to the Supreme Court's antipa-thy to the panel majority's distinction between mitigating evi-

dence that addresses culpability and mitigating evidence that allegedly has a "forward-looking purpose" is answered by a review of the arguments made and rejected in *Payton*.

As I understand the majority's logic, the language — "[a]ny other circumstance, which extenuates the gravity of the crime even though it is not a legal excuse of the crime," — must be read, following *Boyde* and *Payton*, to authorize consideration of background and character evidence that "does not concern the crime itself," *Payton*, 125 S. Ct. 1439, but which "explain[s] why the defendant committed the crime." *Belmontes*, 414 F.3d at 1134. The majority nonetheless claims that factor (k) prohibits the jury from considering background and character evidence that arguably addresses a defendant's "probable future conduct." *Id.*

The Supreme Court disapproved of this type of technical hairsplitting in *Payton* by quoting the following passage from *Boyde*:

> We think the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence. . . . [J]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Payton*, 125 S. Ct. at 1440 (quoting *Boyde*, 393 U.S. at 381). Moreover, it should be noted that the very evidence that the panel majority sees as suggesting that Belmontes would not pose a future danger if sentenced to life, also bears on his culpability. A juror could just as reasonably conclude that the

evidence that Belmontes, following his prior convictions, found God and rose to the number two position on a fire-fighting crew before savagely beating an unarmed 19-year-old woman with a dumbbell bar enhances his culpability, rather than suggests that in the future he might make a positive contribution to society.

At the penalty phase of Payton's trial, the defense concentrated on his post-crime behavior, presenting evidence that in the 21 months Payton spent in prison, "he had made a sincere commitment to God, participated in prison Bible study classes and a prison ministry, and had a calming effect on other prisoners." 125 S. Ct. at 1436. The prosecutor, however, in his closing argument "offered jurors his opinion that factor (k) did not allow them to consider anything that happened 'after the [crime] or later.' " *Id*. at 1436. The Supreme Court explained:

> The parties do not now dispute that this was a misstatement of law. The defense objected to the comment and moved for a mistrial, which the trial court denied. The court admonished the jury that the prosecutor's comments were merely argument. But it did not explicitly instruct the jury that the prosecutor's interpretation was incorrect.

*Id*. at 1437.

On direct appeal, Payton argued that factor (k) was misleading and that the jury incorrectly was led "to believe it could not consider the mitigating evidence of his postconviction conduct." *Id.* The California Supreme Court, however,

> applying *Boyde*, . . . which had considered the constitutionality of the same factor (k) instruction, . . . held that in the context of the proceedings there was no reasonable likelihood that Payton's jury believed it was required to disregard his mitigating evidence.

*Id.* The Supreme Court then denied certiorari. *Id.* Thereafter, a district court granted Payton's habeas petition, we first affirmed the grant en banc by a six to five vote, and then on remand from the Supreme Court, again affirmed the grant en banc by a six to five vote. *Id.* at 1437-38.

It is true that the Supreme Court in finally reversing this court, and directing the denial of Payton's habeas petition, applied the deferential standard of the AEDPA. Nonetheless, its comments concerning both the interpretation of factor (k) and the proceedings before the jury, reveal that its remand in this case is a directive to this court to reconsider its approach to the jury instructions at issue.

In *Payton*, the Supreme Court, addressing this court's reasoning that *Boyde*'s rationale was not controlling because *Boyde* concerned pre-crime, not post-crime, mitigating evidence, wrote:

> We do not think that, in light of *Boyde,* the California Supreme Court acted unreasonably in declining to distinguish between precrime and postcrime mitigating evidence. After all, *Boyde* held that factor (k) directed consideration of any circumstance that might excuse the crime, and it is not unreasonable to believe that a postcrime character transformation could do so. Indeed, to accept the view that such evidence could not because it occurred after the crime, one would have to reach the surprising conclusion that remorse could never serve to lessen or excuse a crime. But remorse, which by definition can only be experienced after a crime's commission, is something commonly thought to lessen or excuse a defendant's culpability.

*Id.* at 1439. This perspective — holding that the California Supreme Court could reasonably decline to distinguish between pre-crime and post-crime mitigating evidence — is

contrary to the panel majority's distinction in this case between background and character evidence that goes to culpability (but does not concern the crime) and such evidence that allegedly goes to future dangerousness. In other words, the Supreme Court's determination that factor (k) may cover post-crime mitigation evidence inherently rejects the panel majority's position that factor (k) prevented the jury from considering the pre-crime mitigating evidence that allegedly addressed future dangerousness.

Furthermore, in *Payton*, the prosecutor had argued to the jury that it should not consider Payton's mitigation evidence. The Supreme Court, nonetheless, held that the California Supreme Court could reasonably conclude that "this line of prosecutorial argument did not put Payton's mitigating evidence beyond the jury's reach." *Id.* at 1440. Again it is impossible to reconcile this perspective with the majority's insistence that Belmontes' jury "might" have been misled by the trial court's failure to affirmatively state that it could "consider the portion of his mitigating evidence that tended to show that he would adapt well to prison and would become a constructive member of society if granted a life sentence." *Belmontes*, 414 F.3d at 1133.

Unlike the situation in *Payton*, here, "both the prosecutor and the defense attorney urged the jury to consider the mitigating evidence, and the trial court likewise instructed the jury to consider all the evidence unless directed otherwise." *Id.* at 1143 (O'Scannlain, J., dissenting). Surely, the dissent is correct that it is unreasonable to conclude that the jurors — having heard the mitigating evidence, and contrary to the instructions that they received from the prosecutor, defense counsel and the court — decided that they could not consider Belmontes' mitigating evidence.

## III

Finally, the majority's contrary position is rooted in a premise that was squarely rejected by the Supreme Court in

*Boyde* and *Payton*. The majority argues that Belmontes' "mitigation evidence was simply not covered by any natural reading of the words of the unadorned factor (k) instruction." *Belmontes*, 414 F.3d at 1134. The same argument was made and rejected in *Boyde* concerning evidence pertaining to a defendant's background and character, but not related to the crime. 494 U.S. at 382. Similarly, a "natural reading" of factor (k) would not cover the post-crime mitigation evidence at issue in *Payton*. Thus, the majority's approach is based on a semantical truism that the Supreme Court has repeatedly held to have no legal significance.

## IV

*Payton* is not an irrelevant post-AEDPA case. Rather, the Supreme Court's reference to *Payton* in its order remanding this case to us was a clear and polite direction to reconsider our approach to the jury instructions at issue in light of the Supreme Court's opinions in *Payton* and *Boyde.* I dissent from the denial of rehearing en banc because we failed to abide by the Supreme Court's directive.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2005 Thomson/West.